IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Lamar Josiah McDaniels, <br><br> Plaintiff, <br><br> vs. <br><br> Mr. Cleary, Patrol Officer Badge No. 6658 Myrtle Beach Police Department; and Mr. Planten, PFC Officer Badge No. 7139 Myrtle Beach Police Department, <br><br> Defendants. | Civil Action No. 6:09-1518-TLW-WMC <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motions for summary judgment (docs. 28, 29). The plaintiff, who is proceeding *pro se*, filed this action pursuant to Title 42, United States Code, Section 1983, claiming that his constitutional rights have been violated.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

The defendants each filed a motion for summary judgment on September 18, 2009. By order filed September 22, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response on October 2, 2009.

## FACTS PRESENTED

On March 20, 2008, shortly after 8:00 p.m., defendant Officer Planten and another officer with the Myrtle Beach Police Department were conducting surveillance on

a known drug house on Chester Street in Myrtle Beach, South Carolina. The purpose of their surveillance was to obtain intelligence on drug dealing activity. The officers observed the plaintiff enter the house and a short time later leave the house. When the plaintiff left the house, the officers approached him and asked for his identification. The plaintiff presented a Department of Corrections Prison ID card. While one of the officers radioed dispatch to see if the plaintiff had any outstanding warrants, the plaintiff explained that his license was suspended due to tickets he received in Florida. He also told Officer Planten that he had court in Myrtle Beach for the Florida tickets. When Officer Planten asked him how he could have court in South Carolina for Florida tickets, the plaintiff began to look around nervously. Shortly thereafter, dispatch confirmed the plaintiff's license was suspended indefinitely for a controlled substance violation. At that point, one of the officers asked the plaintiff to put his hands behind his back so he could be handcuffed while the officers attempted to clarify the plaintiff's story (Planten aff. ¶¶ 1-9).

The plaintiff immediately showed resistance by straightening his arms and facing the officers. The officers grabbed his arms to put them behind his back. However, the plaintiff continued to resist by straightening his arms and pulling them in front of his body. In order to restrain the plaintiff, one of the officers swept his leg, and all three of them fell to the ground. After a brief struggle, the officers rolled the plaintiff on his stomach and handcuffed him behind his back. They then helped the plaintiff to his feet. The plaintiff did not complain of any injuries (Planten aff. ¶¶ 10-12).

Officer Planten radioed dispatch to tell them there had been a brief struggle, but that the plaintiff was detained. At this time, more officers arrived on the scene, and the plaintiff was taken to the front of a police car and searched pursuant to arrest for resisting arrest. During this time, Officer Planten searched the area where the plaintiff fell for any contraband or other property. Pursuant to the search of the plaintiff, officers found a small

2

baggy tied in a knot. The residue in this baggy looked like cocaine and later tested positive for cocaine (Planten aff. ¶¶ 13-14).

One of the officers then asked the plaintiff to open his mouth and shined his flashlight in the plaintiff's mouth to see if he was carrying anything in his mouth. The officer saw what he thought was a plastic baggy under the plaintiff's tongue. This baggy looked similar to the one found in the plaintiff's pocket. The officer asked the plaintiff to lift up his tongue, and the plaintiff responded by quickly turning his face away and attempting to swallow the baggy. Officers told him to spit out the baggy because they believed he may be carrying drugs in his mouth. When the plaintiff ignored these commands, one of the officers tried to manually open the plaintiff's jaws and called other officers for assistance (Planten aff. ¶¶ 15-17). Defendant Officer Cleary assisted by holding the plaintiff's left foot while another officer held his right foot (Cleary aff. ¶ 5). Defendant Officer Planten assisted the other officers and tried to hold the plaintiff's head still. The plaintiff resisted by kicking at the officers, thrashing his body against the hood of the car and jerking his head away from the officers. The officers also yelled at him to "spit it out" and "don't swallow it." However, he continued to resist (Planten aff. ¶¶ 17-19).

At this time, one of the officers called for assistance with a taser. Another officer removed the probe cartridge of his taser, yelled "Code Yellow," and delivered a drive stun to the plaintiff's right shoulder. Soon thereafter, the plaintiff spit out a set of false teeth. The officers found nothing in his mouth (Planten aff. ¶ 20).

After he stopped resisting, officers observed a small amount of blood on the plaintiff's forehead and called EMS to treat any possible injuries. EMS determined the blood came from a torn scab. They also found some minor scratches on his shoulder. EMS put a small bandage on the forehead wound, and the plaintiff' refused transport by EMS. Officers transported the plaintiff to the Myrtle Beach City Jail for booking and charged him with resisting arrest, possession of drug paraphernalia, and failure to appear for traffic

3

citation or a NRVC violation (Planten aff. ¶¶ 21-22; Cleary m.s.j., ex. A). Once at the jail, the plaintiff once again refused medical treatment (Planten m.s.j., ex. B).

On April 14, 2008, the plaintiff pleaded guilty to all three warrants generated from this incident (Planten m.s.j., ex. C). This lawsuit followed. The plaintiff claims he suffered $1,800,000.00 in damages as a result of excessive force, false arrest, and slander.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

4

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

*False Arrest*

To the extent the plaintiff alleges a claim for false arrest under Section 1983 or as a state law claim, the claim fails. "The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures, and seizure of an individual effected without probable cause is unreasonable." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 183 (4th Cir.1996). Conversely, "there is no cause of action for 'false arrest' under Section 1983 unless the arresting officer lacked probable cause." *See Street v. Surdyka*, 492 F.2d 368, 372-73 (4th Cir.1974).

The reasonableness of a seizure under the Fourth Amendment should be analyzed from an objective perspective. *See Graham v. Connor*, 490 U.S. 386, 396-99 (1989) ("The Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts like 'malice' and 'sadism' have no proper place in

5

that inquiry."). "Probable cause need only exist as to any offense that could be charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3rd Cir.1994).

> Probable cause to justify an arrest arises when "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." And when it is considered in the light of all of the surrounding circumstances, even "seemingly innocent activity" may provide a basis for finding probable cause.

*Porterfield v. Lott*, 156 F.3d 563, 569 (4th Cir. 1998) (internal citations omitted). In order to prove an absence of probable cause, the plaintiff "must allege a set of facts which made it unjustifiable for a reasonable officer to conclude" the plaintiff was involved in the charged offense. *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002).

In this case, probable cause existed for the plaintiff's arrest for failure to appear for traffic citation and possession of drug paraphernalia. The plaintiff was observed going in and coming out of a known drug house. A check for outstanding warrants revealed that the plaintiff's license was suspended due to tickets he received in Florida, and he was found in possession of a baggy of cocaine. The charge of resisting arrest was also supported by probable cause, as the plaintiff straightened his arms and pulled them in front of his body to prevent the officers from being able to handcuff him. Here, the circumstances were sufficient to warrant a prudent person, or one of reasonable caution, to believe that the plaintiff was committing the offenses charged at the time the officers made the arrest. Furthermore, the plaintiff pleaded guilty to the crimes with which he was charged. *See Roesch v. Otarola*, 980 F.2d 850, 853 (2d Cir. 1992) ("A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else

6

waive his section 1983 claim."); *see also State v. Snowdon*, 638 S.E.2d 91, 92 (S.C. Ct. App. 2006). Accordingly, the false arrest claim fails.

***Excessive Force***

The plaintiff next alleges the defendants used excessive force in searching and arresting him. He specifically contends that he was "shocked numerous times and [they] choked me" (comp. 3). The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is "unreasonable" under the Fourth Amendment requires "'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. *Id.* at 8-9 (question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that law enforcement officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. *See id.* at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The court must also consider the extent of the injuries caused to the plaintiff. *See Jones v. Buchanan*, 325 F.3d 520, 530-31 (4th Cir.2003). The reasonableness of the officer's use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (recognizing that the police must often

7

make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving").

Here, the undisputed evidence shows that the defendant officers observed the plaintiff resisting a lawful search. The plaintiff's active resistance was sufficient to justify their assistance in restraining the plaintiff and the amount of force they used, which was limited to Officer Planten holding the plaintiff's head still and Officer Cleary holding the plaintiff's left foot. This amount of force was required to control the plaintiff, who continued to resist until another officer used a taser. Neither of the defendant officers used a taser on the plaintiff, nor is there any evidence that these officers instructed the officer to use a taser on the plaintiff. Moreover, following his arrest, the plaintiff did not complain of any injury and refused medical treatment, with the only observed injury to the plaintiff being a torn scab.

Based upon the foregoing and in consideration of the above factors, the plaintiff's excessive force claim fails.

*Slander*

The plaintiff also alleges a claim for slander, but he fails to allege any basis for the claim other than his arrest (comp. 5). Under South Carolina law, slander is a spoken defamation. *Parrish v. Allison*, 656 S.E.2d 382, 388 (S.C. Ct. App. 2007). To recover for defamation, a plaintiff must establish there was (1) a false and defamatory statement by the defendant concerning the plaintiff, (2) lack of privilege for the defendant to make the statement, (3) defendant's fault in making the statement to a third person or persons, and (4) actionability of the statement irrespective of special harm or special harm. *Id.* at 388-89. If defamatory meaning is obvious on the face of the statement, the statement is defamatory *per se. Id.* at 389. A slanderous statement is actionable *per se*, and requires no proof of special damage, if it falsely charges the plaintiff with a crime involving moral turpitude. *Id.*

Here, there is no evidence that either of the defendant officers made a potentially defamatory statement concerning the plaintiff. Further, even if their participation in restraining the plaintiff during the search incident to arrest could be viewed as a statement charging the plaintiff with a crime involving moral turpitude, the plaintiff must show the statement was false. The plaintiff's guilty plea to the charges for which he was arrested, however, admits the charges were true. Based upon the foregoing, the claim fails.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motions for summary judgment (docs. 28, 29) be granted.

s/William M. Catoe
United States Magistrate Judge

February 26, 2010

Greenville, South Carolina